IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>PLAINTIFF,<br><br>v.<br><br>ONE 2009 FORD F-150 TRUCK, VIN 1FTPW12V19KB37218; AND ONE 1995 CHRIS-CRAFT BOAT, HULL NUMBER CCBGY1441495, WITH 1986 FIBERKING MODEL 1767 TRAILER, VIN 1FKA3CR19G1D00607,<br><br>DEFENDANTS. | Civil Action No. |

**COMPLAINT FOR FORFEITURE**

COMES NOW the United States of America, Plaintiff in the above-styled civil matter, pursuant 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A) and (C), and files this Complaint for Forfeiture, showing the Court as follows:

1. On or about March 15, 2017, agents of the Drug Enforcement Administration ("DEA") seized a 2009 Ford F-150 pickup truck, VIN 1FTPW12V19KB37218 ("the Defendant Vehicle"), and a 1995 Chris-Craft Boat, hull number CCBGY1441495, with a 1986 Fiberking model 1767 trailer, VIN

1

1FKA3CR19G1D00607 (collectively, "the Defendant Boat"), from Kenneth Troy Patterson, a/k/a Kenny Patterson, a/k/a "Hollywood" ("Patterson"), at 4329 Rocklane Drive, Conley, Clayton County, Georgia, a place within the jurisdiction and venue of this Court.

2. The Defendant Vehicle and the Defendant Boat are presently within the jurisdiction of this Court and are being held by the United States Marshals Service in a secure location.

3. The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1345 and 1355.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1395.

## II. FORFEITURE STATUTES

5. Pursuant to 21 U.S.C. § 841(a), except as authorized, it is unlawful for any person to knowingly or intentionally distribute or dispense a controlled substance.

6. Pursuant to 21 U.S.C. § 881(a)(6), all moneys and things of value that were furnished or intended to be furnished in exchange for a controlled substance, that constitute proceeds traceable to such an exchange, or that were used or were intended to be used to facilitate the sale or exchange of a controlled substance in violation of 21 U.S.C. § 841 are subject to seizure and forfeiture to the United States.

7. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property which constitutes or was derived from proceeds traceable to a violation of any offense constituting a "specified unlawful activity" is subject to forfeiture to the United States.

8. 18 U.S.C. § 1956(c)(7) defines, in relevant part, a "specified unlawful activity" as any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).

9. 18 U.S.C. § 1961(1) includes, as part of the list of offenses, "dealing in a controlled substance or listed chemical."

10. Pursuant to 18 U.S.C. § 1956(a)(1)(B)(i), it is a crime for any person to knowingly conduct or attempt to conduct a financial transaction involving proceeds of a specified unlawful activity with the intent to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

11. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in or traceable to a transaction or attempted transaction in violation of 18 U.S.C. § 1956 is subject to forfeiture to the United States.

### III. BASIS FOR FORFEITURE

12. In or about February 2017, DEA agents in Atlanta received information from DEA agents in Columbia, South Carolina that Patterson is a multiple kilogram distributor of crystal methamphetamine in the Atlanta, Georgia area.

3

13. Atlanta DEA agents are familiar with Patterson as someone who has been involved in distributing illegal narcotics for numerous years.

14. Patterson was prosecuted in the United States District Court for the Northern District of Georgia for conspiracy to distribute controlled substances in *United States v. Kenneth Troy Patterson, et al.*, Criminal Indictment 1:88-CR-412-ODE, and was released from the custody of the Federal Bureau of Prisons on or about July 7, 2000.

15. Additionally, in or about August 2011, the Oconee County Sheriff's Office contacted DEA Atlanta seeking assistance with its eighteen-month investigation into numerous narcotics traffickers operating in Georgia, North Carolina, South Carolina, and Tennessee.

16. As part of its investigation, the Oconee County Sheriff's Office identified Patterson as an individual who managed the flow of methamphetamine into the Atlanta area and who sold one- to three-pound quantities of methamphetamine from his residence.

17. Consequently, DEA Atlanta opened an investigation into Patterson, but that investigation did not lead to an indictment.

18. Based on the information learned in February 2017 and its prior knowledge and investigation of Patterson, agents initiated a new investigation of Patterson.

19. On March 15, 2017, agents, using a Confidential Source of Information ("CS"), purchased approximately 1.1 pounds of crystal methamphetamine from Patterson.

20. Agents met with the CS at the Clayton County Police Department.

21. According to the CS, Patterson agreed to sell him/her one pound of "Ice" at Patterson's residence located at 4329 Rocklane Drive, Conley, Georgia ("the Rocklane Drive property").

22. Agents searched the CS for contraband, weapons, and money, but they did not find anything on the CS's person.

23. Agents gave the CS $6,000 in United States currency to purchase the Ice from Patterson.

24. Agents recorded all of the serial numbers for the $6,000 in United States currency.

25. Agents also searched the CS's vehicle for contraband, weapons, and money, but they did not find anything inside the vehicle.

26. The agents gave the CS a recording device so that the CS would record the transaction with Patterson.

27. The CS left the Clayton County Police Department, and agents followed to maintain constant surveillance.

28. At approximately 1:45 p.m., the CS arrived at the Rocklane Drive property and entered the residence.

29. The recording device was activated at that time, and the agents were able to hear audio of the CS's conversation with Patterson.

30. At some point, Patterson went back to a bedroom, and the CS could hear someone banging on a wall of the Rocklane Drive property.

31. Patterson returned to where the CS was located inside the residence, and he was carrying several small packages wrapped in blue tape.

32. Patterson told the CS, "This is what I got."

33. At approximately 1:59 p.m., the CS returned to his/her vehicle, retrieved the $6,000 in United States currency, and then returned to the residence.

34. Agents observed a silver Toyota Solara bearing Georgia tag RFK0445 ("the Solara") arrive at the Rocklane Drive property at approximately 2:00 p.m.

35. Agents observed a white male exit the Solara and go into the Rocklane Drive property.

36. At approximately 2:05 p.m., agents observed the same white male exit the Rocklane Drive property and get into the Solara.

37. Agents observed the Solara depart the Rocklane Drive property.

38. At approximately 2:10 p.m., officers with the Clayton County Police Department initiated traffic stop of the Solara.

39. During the traffic stop, officers arrested the Solara's driver, identified as James David Garmon, Jr. ("Garmon"), for driving on a suspended license.

40. During a search of the Solara, officers found a gram of methamphetamine and Schedule IV pills that were not in their original container.

41. Consequently, officers also charged Garmon with a violation of the Georgia Controlled Substance Act.

42. DEA Task Force Officer David Fouty ("Task Force Officer Fouty") began to send text messages to the CS, stating that the CS should complete the transaction and leave the Rocklane Drive property.

43. At approximately 2:26 p.m., the CS sent Task Force Officer Fouty text messages stating that he/she was still trying to complete the transaction and that everything was fine.

44. At approximately 3:15 p.m., the CS exited the Rocklane Drive property.

45. The CS sent Task Force Officer Fouty a text message stating that Patterson had contacted associates and asked them to bring methamphetamine to the property as Patterson did not appear to have a full pound available to sell the CS as previously agreed.

46. At approximately 3:30 p.m., agents observed a gray Chevrolet Camaro ("the Camaro") driving in the area of the Rocklane Drive property.

47. Agents observed the Camaro drive down Rocklane Drive, turn around in the cul-de-sac, and then leave the area in a manner consistent with counter-surveillance techniques used by individuals involved in the drug trade.

48. At approximately 3:42 p.m., agents observed the Camaro and a Ford Focus ("the Focus") arrive at the Rocklane Drive property at approximately the same time

49. Agents observed a Hispanic male exit the Camaro and walk to the Focus.

50. Agents observed the Hispanic male retrieve a leather bag from the passenger side of the Focus and then carry the bag into the Rocklane Drive property.

51. At approximately 3:44 p.m., agents observed the Focus drive from the scene.

52. At approximately 3:46 p.m., officers with the Clayton County Police Department initiated a traffic stop of the Focus.

53. During the traffic stop, officers arrested the Focus' driver, identified as Francisco Javier Gonzalez, Jr., for possession of less than an ounce of marijuana and for driving without a license.

54. At approximately 3:47 p.m., the CS sent a text message to Task Force Officer Fouty stating that he/she had given Patterson the $6,000 in United States currency and that Patterson had given the cash to the male who was driving the Camaro.

55. At approximately 3:48, p.m., the CS sent a text message stating that Patterson was going to give him/her a kilogram of crystal methamphetamine.

56. At approximately 3:49 p.m., agents observed the male who drove the Camaro to the Rocklane Drive property exit the residence.

57. The male got into the Camaro and drove from the scene.

58. At approximately 3:55 p.m., officers with the Clayton County Police Department initiated a traffic stop of the Camaro.

59. During the traffic stop, officers arrested the driver, identified as Pedro Lopez-Zamora, for obstruction and for driving without a license.

60. During a subsequent search of the Camaro, officers seized $6,000 in United States currency.

61. Agents later compared the serial numbers of the $6,000 in United States currency seized from Lopez-Zamora with the money previously given to the CS and found that they were the same.

62. At approximately 4:10 p.m., agents observed the CS step outside the Rocklane Drive property.

63. The CS called Task Force Officer Fouty and stated that the Camaro would be returning to the Rocklane Drive property with the Ice.

64. The CS then went back inside the Rocklane Drive property.

65. At approximately 4:14 p.m., the CS exited the Rocklane Drive property, got into his/her car, and drive from the scene.

66. Agents followed the CS, and they returned to the Clayton County Police Department.

67. At the Clayton County Police Department, the CS gave agents the package purchased from Patterson, which was wrapped in blue tape.

68. Agents unwrapped the package and found a substance consistent in appearance with methamphetamine.

69. Agents field tested the substance found inside the package, which tested positive for methamphetamine.

70. Agents later determined that the package contained approximately 1.1 pounds of methamphetamine.

71. Agents also searched the CS and his/her vehicle for United States currency, weapons, and contraband, but they did not find anything.

72. The CS told the agents that during the transaction, Patterson went out the front door of the Rocklane Drive property to meet with the Hispanic male and to obtain the leather bag from him.

73. The CS further stated that while Patterson was meeting with the Hispanic male, he/she went into the dining room of the residence to wait.

74. The CS returned to the front of the Rocklane Drive property and observed Patterson wrapping a package of what the CS believed to be methamphetamine in the same blue tape in which the smaller packages had been wrapped.

75. The CS stated that when the wrapping was complete, Patterson gave the package to the CS, who then left the residence.

76. On March 15, 2017, agents obtained a federal search warrant for the Rocklane Drive property from the United States District Court for the Northern District of Georgia.

77. Later that same day, DEA agents and officers with the Clayton County Police Department executed the search warrant at the Rocklane Drive property.

78. At the time of the search, Patterson and three other individuals were inside the Rocklane Drive property.

79. Officers with the Clayton County Police Department arrested Patterson and charged him with trafficking crystal methamphetamine, possession of a firearm

by a convicted felon, possession of a firearm during the commission of a felony, and possession with the intent to distribute methamphetamine in violation of Georgia law.

80. Officers released the three other individuals who were inside the Rocklane Drive property at the time of the search.

81. During the search, law enforcement officers seized the following items:

   a. approximately 3 grams of crystal methamphetamine;

   b. a .22 caliber Remington rifle;

   c. a Taurus .45 caliber pistol with magazine and 8 rounds of ammunition;

   d. a shotgun with sawed off stock and 38 shotgun shells;

   e. a shotgun barrel;

   f. a Motorola cell phone;

   g. $2,088.00 in United States currency;

   h. drug packaging material;

   i. a 1988 Harley Davidson motorcycle;

   j. the Defendant Vehicle; and

   k. the Defendant Boat.

82. On April 18, 2017, DEA agents interviewed Patterson.

83. Patterson stated that he had been directly involved with drug trafficking in the past several years.

84. Patterson further stated that for the past year, he has been selling one to three pounds of methamphetamine a month to a small customer base of two or three people.

85. Patterson stated that Lopez-Zamora had been his supplier of methamphetamine for the past year.

86. Patterson further stated that he contacts Lopez-Zamora via cellphone and places an order for methamphetamine.

87. According to Patterson, Lopez-Zamora would then deliver the methamphetamine to the Rocklane Drive property, but for the past three or four months, Lopez-Zamora would have a courier take the methamphetamine to Patterson's residence to avoid detection by law enforcement.

88. Patterson stated that Lopez-Zamora lives in the Riverdale, Georgia area and that he drives a Camaro.

89. Patterson told the agents that he typically pays approximately $10,000 for a kilogram, i.e., 2.2 pounds, of methamphetamine and that he is often "fronted" one kilogram of methamphetamine at a time.

90. Patterson's criminal history includes the following drug arrests:

    a. on or about March 7, 1980 for a Violation of the Georgia Controlled Substances Act;

    b. on or about July 29, 1981 for the purchase, possession, manufacture, distribution, or sale of marijuana;

    c. on or about August 17, 1988 for conspiracy to distribute cocaine and marijuana in violation of Federal law;

    d. on or about August 14, 1998 for a Violation of the Georgia Controlled Substances Act;

    e. on or about August 19, 2003 for trafficking in cocaine, illegal drugs, marijuana, or methamphetamine;

    f. on or about October 7, 2004 for possession of methamphetamine; and

    g. on or about September 10, 2010 for possession of methamphetamine, trafficking methamphetamine or amphetamine, possession with the intent to distribute methamphetamine, and possession of methamphetamine.

91. From their investigation, agents have not found any verifiable income for Patterson other than selling illegal narcotics, including methamphetamine.

92. On or about June 27, 2017, Patterson filed a claim with the DEA contending that he is the sole owner of the Defendant Vehicle and the Defendant Boat.

93. In his claim, Patterson alleges that he purchased the Defendant Boat on January 21, 2017 from a person who lived in Charlotte, North Carolina.

94. Agents have been unable to verify any registered owner associated with the hull identification number on the boat or with the vehicle identification number on the trailer.

95. Patterson also alleges that he purchased the Defendant Vehicle from Oscar Hinojosa ("Hinojosa") on February 29, 2016, and he attached to his claim documentation of the transaction.

96. The documentation shows that Hinojosa purchased a parcel of real estate from Patterson for $45,000 and that as part of the settlement, Patterson gave Hinojosa, among other things, a $15,000 credit for the Defendant Vehicle.

97. Records on file with the Clayton County Superior Court show that Patterson sold Hinojosa the real property located at 352 Duncan Street, Forest Park, Georgia ("the Duncan Street property") on February 29, 2016 for $45,000.

98. Records on file with the Clayton County Superior Court also show that Patterson purchased the Duncan Street property from U.S. Bank on or about July 12, 2011 for $10,000 and that no security deed or mortgage on that transaction was recorded.

Case 1:17-cv-03651-LMM Document 1 Filed 09/20/17 Page 16 of 18

99. The Defendant Vehicle and the Defendant Boat are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) on the grounds that they were furnished or were intended to be furnished in exchange for a controlled substance, that they constitute proceeds traceable to such an exchange, or that they were used or were intended to be used to facilitate the sale or exchange of a controlled substance.

100. The Defendant Vehicle and the Defendant Boat are also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), because they constitute or were derived from proceeds traceable to a specified unlawful activity, namely the illegal distribution of controlled substances.

101. The Defendant Vehicle and the Defendant Boat are also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), because they were involved in or are traceable to a money laundering transaction or an attempted money laundering transaction in violation of 18 U.S.C. § 1956.

WHEREFORE, the United States prays that:
1) The Court forfeit the Defendant Vehicle and the Defendant Boat to the United States of America;
2) The Court award Plaintiff the costs of this action; and
3) The Court grant such other relief as the Court deems just and proper under the facts and circumstances of this case.

This _____ day of September, 2017.

Respectfully submitted,

JOHN A. HORN
United States Attorney
600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

*[signature]*
Assistant United States Attorney
Georgia Bar No. 064437
michael.j.brown2@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>PLAINTIFF,<br><br>v.<br><br>ONE 2009 FORD F-150 TRUCK, VIN 1FTPW12V19KB37218; AND ONE 1995 CHRIS-CRAFT BOAT, HULL NUMBER CCBGY1441495, WITH 1986 FIBERKING MODEL 1767 TRAILER, VIN 1FKA3CR19G1D00607,<br><br>DEFENDANTS. | Civil Action No. |

### VERIFICATION OF COMPLAINT FOR FORFEITURE

I, Task Force Officer Jimmy S. Trepanier, have read the Complaint for Forfeiture in this action and state that its contents are true and correct to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This 20 day of September, 2017.

_____
TASK FORCE OFFICER JIMMY S. TREPANIER
DRUG ENFORCEMENT ADMINISTRATION